# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1989 |
| COMPLETE TITLE: | Tracie L. Flug, |
| |       Plaintiff-Appellant, |
| |    v. |
| | Labor and Industry Review Commission, Wal-Mart Associates, Inc. and New Hampshire Insurance Company c/o Claims Management, Inc., |
| |       Defendants-Respondents-Petitioners. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 370 Wis. 2d 789, 882 N.W.2d 872
(2016 – Unpublished)

| | |
|---|---|
| OPINION FILED: | June 30, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 15, 2017 |

SOURCE OF APPEAL:

| | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Chippewa |
| JUDGE: | James M. Isaacson |

JUSTICES:

| | |
|---|---|
| CONCURRED: | |
| DISSENTED: | ROGGENSACK, C.J. dissents (opinion filed). |
| | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-respondents-petitioners Labor and Industry Review Commission, there were briefs filed by *Jennifer L. Vandermeuse,* assistant attorney general, and *Brad D. Schimel*, attorney general.  Oral argument by *Jennifer l. Vandermeuse.*

For the defendants-respondents-petitioners Wal-Mart Associates, Inc. and New Hampshire Insurance Company c/o Claims Management, Inc., there were briefs filed by *Ryan J. Steffes* and *Weld Riley, S.C.*, Eau Claire.  Oral argument by *Ryan J. Steffes.*

For the plaintiff-appellant, there was a brief and oral argument by *Jeffrey J. Klemp* and *Law Offices of Jeffrey Klemp*, Eau Claire.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1989
(L.C. No. 2015CV98)

STATE OF WISCONSIN : IN SUPREME COURT

Tracie L. Flug,

      Plaintiff-Appellant,

    v.

Labor and Industry Review Commission, Wal-Mart Associates, Inc. and New Hampshire Insurance Company c/o Claims Management, Inc.,

      Defendants-Respondents-Petitioners.

**FILED**

**JUN 30, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 DANIEL KELLY, J. Tracie L. Flug suffered from two medical conditions——a soft-tissue strain, and a degenerative disc disease. The first was work-related (and has since resolved), the second is not. She underwent surgery in the belief it was necessary to treat her work-related soft-tissue strain. In actuality, it was treating the unrelated degenerative disc disease. The procedure left her with a permanent partial disability. Ms. Flug tells us Wal-Mart (her employer) must compensate her for this permanent partial

disability because she believed, in good-faith, that the disability-causing surgery was necessary to treat her work-related condition. We review the decision of the Labor and Industry Review Commission (the "Commission") denying Ms. Flug's claim for permanent partial disability benefits.

## I. BACKGROUND

### A. Ms. Flug's Injury and Surgery

¶2 Ms. Flug worked as a store supervisor at the Chippewa Falls Wal-Mart. In February of 2013 she was using a 25-ounce price scanner in the store's shoe department. After scanning an item above her head, she felt pain in her neck and right arm as she lowered the scanner. Ms. Flug sought medical treatment from Dr. Sabina Morissette. Dr. Morissette diagnosed Ms. Flug with a "right arm and shoulder strain with possible relation to the cervical spine itself."

¶3 Ms. Flug was referred to Dr. Andrew Floren, an occupational medicine specialist, with whom she met the following month. Dr. Floren's notes state that on the date of her injury Ms. Flug "developed a severe sudden pain in her right upper back area. This pain went down the posterior shoulder and arm to the wrists." At the time of the visit, Ms. Flug stated that her symptoms were "slowly resolving," but that she had an "aching burning pain in her upper back" that "radiat[ed] into the posterior right shoulder and down the arm just a bit." Dr. Floren also noted that a cervical spine x-ray showed "mild degenerative changes," but he drew no connection between that condition and her work injury. He concluded that Ms. Flug had

2

right upper back and shoulder pain with no sign of cervical involvement.

¶4   Ms. Flug's condition improved in some ways over the next few months, but not in others, so Dr. Floren referred her to Dr. Eduardo Perez, a neurosurgeon.  Dr. Perez recommended an anterior cervical discectomy with fusion/fixation at the C5-C6 and C6-C7 levels.  Ms. Flug had the surgery on June 4, 2013.  A month later, she met with Dr. Perez and reported that she was "doing excellent" and was feeling "almost 100 [percent]."  Dr. Floren released Ms. Flug back to work on July 17, 2013, with a lifting restriction that was eventually eliminated.  Dr. Floren declared that Ms. Flug reached a healing plateau by November of 2013, and assessed her (at that time) as having a limited permanent partial disability.

### B.   Ms. Flug's Application for Benefits

¶5   Wal-Mart agreed that Ms. Flug had suffered a work-related injury, and its worker's compensation insurance carrier paid medical expenses up to May 9, 2013, and disability benefits up to June 22, 2013.  But because the insurance carrier did not agree the degenerative disc disease was attributable to Ms. Flug's work injury, it refused further compensation for medical expenses or disability benefits.

¶6   Ms. Flug filed her worker's compensation claim with the Wisconsin Department of Workforce Development on August 16, 2013.  She sought compensation from Wal-Mart for continuing medical expenses, additional temporary disability benefits

3

through August 8, 2013, as well as benefits for a 20 percent permanent partial disability consequent to her back surgery.

¶7 Wal-Mart asked Dr. Morris Soriano to perform an Independent Medical Examination (IME) of Ms. Flug's injury. In a report submitted in February of 2014, Dr. Soriano said that Ms. Flug's records contained evidence of two unrelated medical issues. He diagnosed Ms. Flug's condition as a "post cervical strain" (the work-related injury), and "preexisting mild degenerative disc disease C6-7 and C5-6."

¶8 Dr. Soriano opined that the only injury Ms. Flug suffered from the February 14, 2013, work-related incident was a "soft tissue cervical and shoulder strain." He said this condition "reached an end of healing within a four to six-week period," long before Ms. Flug underwent her back surgery. Because that was a reasonable amount of time within which to recover from such a strain, Dr. Soriano said it would be proper to conclude that Ms. Flug suffered temporary disability during that period.

¶9 The disc degeneration, however, was an entirely different matter. Dr. Soriano said this was a pre-existing condition and there was never any anatomical or medical relationship between it and Ms. Flug's soft-tissue strain. In fact, he said "[i]t is not probable or even possible that the accident of February 14, 2013, [caused Ms. Flug's] disc degeneration." Considering the nature of the work Ms. Flug was performing at the time of her injury, Dr. Soriano also said "[i]t is not probable or even possible that reaching up with a

4

25-ounce scanner over a period of time" could have "cause[d] any disability by precipitating, aggravating or accelerating the preexisting condition." He also noted that Dr. Floren had offered no objective evidence of any cervical disability related to the accident. He concluded, therefore, that the surgery was not "reasonable, necessary or related" to Ms. Flug's work injury.

### C. Review of Ms. Flug's Claim

¶10 On April 1, 2014, an Administrative Law Judge held a hearing on Ms. Flug's claims. Dr. Floren submitted a report and addendum stating that although Ms. Flug's work activities had not caused her degenerative condition, it was "medically probable" that they precipitated, aggravated, or accelerated that preexisting condition beyond its normal progression. Dr. Floren found the surgery and all medical treatment received since February 14, 2013, reasonable and necessary to treat the consequences of Ms. Flug's work-related injury.

¶11 Dr. Soriano also submitted a report. He said Ms. Flug suffered from "multilevel moderate degenerative disc disease," though the condition wasn't aggravated or exacerbated by her work activity on the date of injury. While Dr. Soriano said that Ms. Flug's medical treatment prior to June 4, 2013 was reasonable and necessary to treat her soft-tissue strain, the surgery performed was "unrelated to the work incident or work exposure." Dr. Soriano also said "[i]t is not physically possible that scanning a product on a shelf could have aggravated or worsened two levels of a previously arthritic

condition at C5-C6 and C6-C7 to the point where it became symptomatic," and that the surgery "clearly ha[d] no relationship to any documentable, repetitive, objective neurological findings."

¶12 The ALJ[1] acknowledged that Ms. Flug suffered an injury at work, but said there was a "legitimate doubt as to the compensability of the claim as a traumatic injury beyond that already conceded and paid by [Wal-Mart]." Because the ALJ concluded Ms. Flug had already received all compensation due to her prior to the surgery, he dismissed the claim. Ms. Flug appealed the ALJ's determination, following which the Commission adopted the ALJ's factual findings and order as its own. The Commission affirmed the ALJ's decision stating specifically that Ms. Flug was not entitled to permanent partial disability benefits because the ALJ had expressed a "legitimate doubt as to whether [Ms. Flug] suffered any work injury."

¶13 Ms. Flug sought review of the Commission's decision in the Chippewa County circuit court. There, the Commission recognized and admitted it had mistakenly concluded the ALJ had found no work injury at all. It argued the court should nonetheless affirm the Commission's decision because Ms. Flug's surgery was unrelated to her compensable injury. The circuit court[2] assumed the existence of Ms. Flug's workplace injury, but

---

[1] Roy L. Sass, presiding.

[2] The Honorable James M. Isaacson, presiding.

6

concluded the Commission/ALJ had a sufficient factual basis to deny the claim for benefits, and so affirmed. Ms. Flug appealed.

¶14 In an unpublished opinion, the court of appeals reversed the circuit court.[3] Its analysis focused on whether the disability-creating treatment must be undertaken to treat a compensable injury to qualify the employee for benefits. Based on its reading of Wis. Stat. § 102.42(1m) (2013-14),[4] the court of appeals concluded no such relationship between injury and treatment was required. Instead, it said the employee only need have a good faith belief that the treatment was so related. The court remanded the matter to the Commission to inquire into Ms. Flug's beliefs.

¶15 The Commission's timely petition for review presented this single issue: "Does Wis. Stat. § 102.42(1m) make an employer liable for disability resulting from invasive treatment, when the claimant has not established that the treatment in fact treated a compensable work injury?" We granted the petition, and now affirm the Commission's order dismissing Ms. Flug's claim for disability benefits.

---

[3] Flug v. LIRC, No. 2015AP1989, unpublished slip. op. (Wis. Ct. App. June 21, 2016).

[4] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

## II.  STANDARD OF REVIEW

¶16  In cases involving administrative agencies we review the decision of the agency.  Estate of Szleszinski v. LIRC, 2007 WI 106, ¶22, 304 Wis. 2d 258, 736 N.W.2d 111. The court has, at times, deferred to an agency's interpretation of a statute. Harnischfeger Corp. v. LIRC, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995).  But we need not address the issue of deference here because, based on its mistaken belief that Ms. Flug had suffered no compensable injury at all, the Commission did not answer the question presented for our review. Thus, as is our tradition with questions of law, we review the meaning of Wis. Stat. § 102.42(1m) de novo.[5]

¶17  The Commission's findings of fact, however, are normally beyond question:  "The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive."  Wis. Stat. § 102.23(1)(a)1.  Ms. Flug does not challenge the Commission's findings of fact here, so we accept them as presented by the Commission.

---

[5] Because we affirm the Commission's decision, the question of deference is immaterial to the outcome of the case.

8

III. ANALYSIS

¶18 Whether Ms. Flug is entitled to compensation depends on how Wis. Stat. § 102.42(1m) applies to her pre-existing medical condition, her compensable injury, her treatment, and her resulting disability. The statute provides the following:

> Liability for unnecessary treatment. If an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary, the employer shall pay disability indemnity for all disability incurred as a result of that treatment.

Wis. Stat. § 102.42(1m). The parties agree Ms. Flug sustained a compensable injury while working for Wal-Mart, she subsequently underwent an invasive treatment, and she suffered a permanent partial disability as a direct result of the treatment. They disagree on what it means for a treatment to be "generally medically acceptable, but . . . unnecessary."

A. The Terms of the Argument

¶19 The disagreement centers on the necessary relationship, or lack thereof, between the treatment and the employee's compensable injury. The Commission says an invasive treatment is "unnecessary" within the meaning of this statute if its purpose is to treat the compensable injury, but it fails to cure the injury, or relieve its effects. If an employee undergoes such a treatment in good faith, the Commission says, this statute makes the employer liable for benefits when the treatment causes a disability. The court of appeals, on the other hand, concluded it does not matter whether the invasive procedure was actually directed at a compensable injury, so long

9

as the employee had a good faith <u>belief</u> that it was. <u>Flug</u>, No. 2015AP1989, ¶32 ("[W]e conclude that, to establish good faith under Wis. Stat. § 102.42(1m), an employee must show that he or she reasonably believed the proposed treatment was both necessary and the result of a compensable injury."). Thus, the court of appeals held that this statute can make an employer liable for benefits even when the injury and its treatment had nothing to do with the workplace.

¶20 Contrary to what one might expect, Ms. Flug's argument neither directly refutes the Commission's position, nor champions the court of appeals' analysis.[6] Whereas both the Commission and the court of appeals base their competing analyses on the shared understanding that Ms. Flug's surgery had nothing to do with her compensable injury, Ms. Flug does not.[7] Instead, she characterizes her dispute with the Commission as a disagreement over the extent of benefits available for the

---

[6] The extent of Ms. Flug's assessment of the court of appeals' reasoning was to misinterpret it as rejecting a requirement that the invasive procedure "was actually necessary to treat her work injury." That is not what the court of appeals said. What it said was that there need be no relationship between the disability-causing treatment and a compensable injury: "By arguing that an employee must show his or her treatment was the result of a compensable injury, the Commission reads an additional causation requirement into the statute." <u>Flug</u>, No. 2015AP1989, ¶30.

[7] To the extent this sentence refers to the Commission, it is a characterization of its argument here——Justice Ann Walsh Bradley misunderstands it as referring to the Commission's decision under review. <u>See</u> Justice Ann Walsh Bradley's dissent, ¶129.

treatment of a compensable injury: "The key to the statute is whether the injured employee undergoes surgery for a compensable injury in good faith——here, reasonably believing, based on her doctors' advice, that it was necessary to cure and relieve Flug from the continuing symptoms that began with her work injury." She says the relevant medical testimony establishes that "[t]he surgery, undertaken for the injury, was 'reasonable and necessary to cure and relieve' [her] from the effects of cervical disability which began at work."

¶21 Out of the several cases Ms. Flug addressed in her argument, there are two that provide particularly helpful insight on the nature of her argument. The first is Spencer v. LIRC, 55 Wis. 2d 525, 200 N.W.2d 611 (1972). Indeed, Ms. Flug dedicated the bulk of her argument to the proposition that Wis. Stat. § 102.42(1m) is, in the main, a codification of Spencer, and that we can resolve this case by reprising that analysis here.[8] Spencer, as Ms. Flug acknowledges, concerned an employer's liability for the harmful side-effects of a procedure that unquestionably treated a compensable injury. There, we said "[t]he employer is responsible for the consequences not only of the injury, but the treatment" and we observed the

---

[8] Ms. Flug introduced her argument with the assertion that "[t]he holding in Spencer is the central focus of this case." She said Wis. Stat. § 102.42(1m) is significant only in that it limited Spencer to circumstances in which the disability-causing treatment is invasive (whereas Spencer required payment of benefits even when the procedure was non-invasive).

11

employer was liable because Mr. Spencer "now has a stiff knee resulting from the original injury." Id. at 532.[9] Ms. Flug says § 102.42(1m) maintains this understanding, and that "[e]mployers remain liable for the good faith treatment an injured employee receives for a compensable injury."

¶22 The second case providing insight on Ms. Flug's argument is City of Wauwatosa v. LIRC, 110 Wis. 2d 298, 328 N.W.2d 882 (Ct. App. 1982). Her treatment of this case confirms that she believes her dispute with the Commission is about the extent of available benefits consequent upon treatment of a compensable injury, not about whether benefits are available when there is no relationship between the disability-causing treatment and her compensable injury. The City of Wauwatosa court denied benefits because there was no connection between the employee's treatment and his compensable injury. The court concluded that "the Spencer rationale applies only to cases involving treatment for an undisputed compensable industrial injury." Id. at 301. In a particularly revealing passage in Ms. Flug's brief, she said this case "is not helpful in our

---

[9] There was an obvious, and direct, line of causation that started with the workplace injury and ended with the stiff knee. The "treatment" to which we referred in the Spencer v. LIRC, 55 Wis. 2d 525, 200 N.W.2d 611 (1972), quote was not just any treatment, it was treatment of the compensable injury. And it was the treatment of the compensable injury that ended in a stiff knee. This relationship is as important to our analysis of Wis. Stat. § 102.42(1m) as it was in Spencer.

12

analysis because it doesn't address the extent of treatment undertaken, in good faith, for a compensable injury."

¶23 Thus, Ms. Flug's argument assumes her surgery was, in fact, "for" the compensable injury, and that the real controversy is over how much treatment was necessary to relieve her of the symptoms caused by that injury.[10] Ms. Flug's assumption, however, is not warranted. The ALJ and the Commission found——as a factual matter——that the surgery didn't treat Ms. Flug's compensable injury.[11] Thus, because the Commission eliminated the factual predicate for Ms. Flug's argument, we would not be able to engage it unless we first rejected the Commission's findings on this point. Ms. Flug does not assert the findings of fact are the result of fraud, or that the Commission acted outside of its powers, so the findings are

---

[10] This is a continuation of the argument Ms. Flug made in the court of appeals, where she unequivocally stated she "sustained a compensable injury and . . . underwent surgery for a compensable injury." Ms. Flug maintained this position even through oral argument here. Her counsel was asked to acknowledge the surgery was not necessary to treat her compensable injury, but he elected not to concede the point.

[11] Although Ms. Flug's "good faith" belief about the necessity of the back surgery is important, as we discuss below, it cannot change the objective fact that the treatment had nothing to do with her compensable injury.

conclusive.[12]   And that puts Ms. Flug's argument beyond our reach.

¶24  Justice Ann Walsh Bradley experienced some difficulty with this.  She says there is a "procedural morass" in this case that stymies her ability to assess the ALJ and Commission's factual findings.  Justice Ann Walsh Bradley's dissent, ¶¶107-10.  The relevant facts, however, are just not that complicated.  For purposes of this analysis, we must know whether the ALJ and the Commission believed the surgery addressed Ms. Flug's compensable injury, or instead her pre-existing condition.  The ALJ found no injury beyond that for which Wal-Mart had already

---

[12] Justice Ann Walsh Bradley says Ms. Flug did challenge the findings of fact here.  Although Ms. Flug may have done so before the circuit court and court of appeals, she did no such thing here.  Justice Bradley finds a factual challenge in Ms. Flug's argument that she acted in good faith in obtaining the surgery.  See Justice Ann Walsh Bradley's dissent, ¶123.  But that was Ms. Flug's argument about the law; it was not a challenge to the Commission's findings of fact.  Ms. Flug based her argument on the assumption that the surgery treated her compensable injury.  An assumption, however, is neither an argument nor a challenge.  A challenge to the Commission's factual findings would involve marshalling the facts supporting her argument, juxtaposing them against the facts supporting the Commission/ALJ's findings, and then demonstrating the credible and substantial evidence does not support the Commission's decision.  That effort is wholly absent from Ms. Flug's argument here.

So Justice Bradley bobbles twice.  First, she confounds legal and factual challenges.  And second, she promotes assumptions to arguments.  We will neither distort nor re-write Ms. Flug's brief to make it say something it clearly does not.

14

compensated Ms. Flug. He said there was "a legitimate doubt as to the compensability of the claim as a traumatic injury beyond that already conceded and paid by the respondents." Flug v. Wal-Mart Assocs. Inc., No.2013-006010, at 4 (LIRC Apr. 30, 2014) (Sass, ALJ). The ALJ also rejected the argument that her workplace activity caused the injury the surgery treated. Id. ("While Dr. Floren also reported the appreciable workplace exposure was causative, this was not developed at hearing particularly given the inconsistency in history of injury . . . ."). There were only two medical conditions at issue, and if the workplace activity did not cause the injury the surgery treated, then by process of elimination we can confidently conclude that the surgery treated Ms. Flug's pre-existing condition. This is also the Commission's determination: "Based on its review, the commission agrees with the decision of the ALJ, and it adopts the findings and order in that decision as its own." Flug v. Wal-Mart Assocs., Inc., WDC No. 201300610 (LIRC Feb. 23, 2015). If there is a procedural morass here, it's not bad enough to keep us from doing our duty.[13]

---

[13] Justice Ann Walsh Bradley also accuses us of getting the facts wrong. See Justice Ann Walsh Bradley's dissent, ¶¶125-30. She disagrees, in particular, with our statement that Ms. Flug believed the surgery was treating her soft-tissue strain. She bases this assertion, apparently, on an argument she created for Ms. Flug ex nihilo——that the work injury exacerbated her pre-existing condition beyond its normal progression, and that the surgery was necessary to treat that exacerbated condition. Maybe Ms. Flug's counsel should have adopted Justice Bradley's litigation strategy. But he didn't——perhaps because the ALJ and

(continued)

15

B. What it Means to be "Unnecessary"

¶25  Still, we must determine what it means for a treatment to be "unnecessary" within the meaning of Wis. Stat. § 102.42(1m) so that we can determine whether the Commission properly denied Ms. Flug's application for benefits.[14]  We begin with the statutory language.  State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation 'begins with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry.'" (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 232, 612 N.W.2d 659)).  We understand the language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."  Id., ¶46.  When this process produces a plain, clear meaning, we go no further.  Id.

¶26  The statute we are considering is part of Wisconsin's comprehensive Worker's Compensation program.  This is "a legislatively enacted compromise designed to bring employers and employees together in a mutually beneficial scheme of

---

Commission had already determined there was insufficient evidence to conclude this had occurred, and he had chosen not to challenge the factual findings before this court.

[14] Although we are reviewing the Commission's decision, not that of the court of appeals, we refer to the court of appeal's reasoning to assist us in determining the proper interpretation of this statute.

guaranteeing benefits in the event of work-related injury [or] disease." Nelson v. Rothering, 174 Wis. 2d 296, 302, 496 N.W.2d 87 (1993). It "provides a broadly applicable method for compensating persons who suffer work-related physical and mental injuries." Byers v. LIRC, 208 Wis. 2d 388, 395, 561 N.W.2d 678 (1997). By relieving employers from tort liability, the Worker's Compensation program "mak[es] employers strictly liable for injuries encompassed within the Act, but limit[s] the liability to compensation established by the statute." Id. These limits are important because the program is not supposed to be "a blanket insurance policy to provide benefits for disabilities which may become manifest while on the job but are in no way caused by or related to the employment." Lewellyn v. Indus. Comm'n, 38 Wis. 2d 43, 61, 155 N.W.2d 678 (1968). It serves an important, but limited, purpose: "It was never intended to make the Workmen's Compensation Law an accident insurance or health insurance measure." Id. (quoting Newman v. Indus. Comm'n, 203 Wis. 358, 360, 234 N.W. 495 (1931)).

¶27 Compensation under the Worker's Compensation program is available only when the employee satisfies the statutorily-defined eligibility requirements. Broadly speaking, an employee is eligible for compensation under this program if he sustains an injury that arises out of his employment. See Wis. Stat. § 102.03(1). Upon the occurrence of such an injury, the employer is responsible for supplying "such medical, surgical, chiropractic, psychological, podiatric, dental, and hospital treatment . . . as may be reasonably required to cure and

17

relieve from the effects of the injury . . . ." Wis. Stat. § 102.42(1). An employer must also pay the employee benefits "if the injury causes disability." Wis. Stat. § 102.43. Thus, in the general scheme of the program, medical expenses and disability benefits are payable only when they are attributable to a qualifying injury.

¶28 This context informs our inquiry into the meaning of Wis. Stat. § 102.42(1m), the nucleus of which says that "[i]f an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary, the employer shall pay disability indemnity for all disability incurred as a result of that treatment." As we described above, we must discern the statutory relationship between Ms. Flug's pre-existing condition, her work-related injury, her surgery, and her partial permanent disability.

¶29 There are two logical ways of reading a statutory provision like Wis. Stat. § 102.42(1m). One can read it as a sentence (as it was written), paying attention to rules of grammar, syntax, and diction to tease out its meaning. Or one might dice it up into its constituent parts and treat each resulting element as an independent requirement that neither qualifies nor is qualified by the others. The court of appeals favored the second approach. It said Ms. Flug is entitled to disability benefits if she meets five distinct elements, which it defined as follows:

18

    (1)  the employee sustained a compensable injury;
    (2)  he or she undertook invasive medical treatment;
    (3)  the treatment was undertaken in good faith;
    (4)  the treatment was generally medically acceptable, but unnecessary; and
    (5)  the employee incurred a disability as a result of the treatment.

Flug, No. 2015AP1989, ¶30. This, of course, is not what the legislature wrote. It is simply how the court of appeals chose to frame its analysis. While this is a legitimate method of approaching statutory language, it does present peculiar risks. When translating a sentence into discrete elements, it is easy to lose critical information by neglecting to propagate the proper relationship between the parts of the sentence into the list. And that is what happened here.

¶30 Careful examination of the elements above reveal that the court of appeals maintained the relationship between the "treatment" and other parts of the sentence in elements three through five. But in the first two elements, the court of appeals set up "compensable injury" and "treatment" as having nothing to do with each other. This relegated the "compensable injury" provision to a mere gatekeeper role that, once satisfied, could be ignored for the balance of the analysis. Consequently, the court of appeals' translation was outcome-determinative.[15] That is to say, the court inadvertently baked the outcome into the structure it created for the analysis——it assumed there need be no relationship between the compensable

---

[15] As is Chief Justice Roggensack's dissent. Chief Justice Roggensack's dissent, ¶87.

injury and the treatment. So when the Commission asserted a necessary link between the two, the court of appeals criticized the argument as "read[ing] an additional causation requirement into the statute." It did not say why the Commission's posited relationship between the treatment and the compensable injury was inapposite, as a textual matter, other than by referring to how it had diced the statutory language. It is true that the Commission's asserted relationship finds no reflection in the court of appeals' analytical construct, but that is a fault only if the court of appeals accurately translated the statute into a list of elements. That is the question we must now answer.

¶31 Instead of separating the statute into separate elements, we will analyze the sentence as written, using our standard toolbox to help us derive its meaning. The court of appeals properly recognized the centrality of "treatment" to the meaning of the statute——the term appears in four of the five elements it culled from the statutory language. So some attention to the dictional provenance of this term will help us determine its proper place and function in the statute. "Treatment" is the nominal form of the verb "to treat." "Treat," of course, is a transitive verb, which means it requires a direct object on which to act. That is, one does not simply "treat," one treats something——a person, a condition, a disease, etc. Nominalizing the verb doesn't remove its transitive property: "Treatment" is the "[a]dministration or

application of remedies <u>to a patient</u> or <u>for a disease or an injury</u>; medicinal or surgical management; therapy."[16] Regardless of whether the word takes its nominal or verbal form, it must still be understood as operating on something.

¶32 With that understanding of this central term, we can now let the rules of grammar direct our understanding of Wis. Stat. § 102.42(1m). Our first goal is discovering the objective of the "treatment." We begin with the part of the statute that says "[i]f an employee who has sustained a compensable injury undertakes . . . invasive treatment . . . ." Without considering more of the statute, "treatment" could operate on one of two possible objects──the employee, or the compensable injury. It is plausible, both textually and logically, that the employee could be the object of the term "treatment." The phrase "who has sustained a compensable injury" could be understood as simply identifying the employee who undertook the treatment, leaving "employee" as the only possible object of the "treatment."[17]

¶33 There are, however, more qualifications to the term "treatment," and they prevent the employee from serving as the object. The statutory language, with the qualifiers included,

---

[16] <u>Treatment</u>, <u>The American Heritage Dictionary of The English Language</u> (3d ed. 1992) (emphases added).

[17] If a treatment treats the "employee," then the object of the treatment comprises any malady from which the employee might suffer. In this case, that would include Ms. Flug's non-compensable degenerative disc disease.

21

says this: "If an employee who has sustained a compensable injury undertakes . . . invasive treatment that is generally medically acceptable, but that is unnecessary . . . ." The requirement that the treatment be "generally medically acceptable," on its own, could direct us with equal ease to either the employee or the compensable injury, and so it provides no help in identifying the object on which it is to operate; we will return to it later. The phrase "but that is unnecessary," on the other hand, tells us that the object of the treatment must be the compensable injury.

¶34 Ms. Flug tells us she fits within the statute because the treatment——her surgery——was unnecessary. But unnecessary to what? If the object of the treatment is the employee (as opposed to the compensable injury), then it wasn't unnecessary at all. In fact, it was quite the opposite. Ms. Flug herself reported that the treatment brought her back to nearly 100 percent. Neither Ms. Flug nor the court of appeals has explained how a treatment can be that effective while simultaneously being unnecessary. If, on the other hand, the statute makes the object of the treatment the compensable injury, then one must determine whether the treatment was directed——as a factual matter——at that particular injury. Either way, Ms. Flug's claim must end here. If the object of "treatment" is the employee, Ms. Flug cannot succeed because the treatment was clearly necessary——it cured her condition. If, instead, the object of "treatment" is the compensable injury, she can proceed no further because the Commission has already

22

found (and we must accept) that the object of Ms. Flug's surgery was not her compensable injury.[18]

¶35 The only way to reach the court of appeals' conclusion would be to allow the object of the treatment to flicker between the employee and the compensable injury, depending on whether we are considering (a) what the treatment was treating, or (b) the treatment's necessity. The court of appeals' formulation would make Ms. Flug the object of "treatment" when considering what the surgery was treating, but flit to the compensable injury in assessing its necessity. Only if such grammatical instability is possible may one conclude that the treatment was treating Ms. Flug, but was unnecessary because it was not treating the compensable injury. However, there is no grammatical rule that allows the object of the treatment to flicker like that.

¶36 We return now to the requirement that the treatment in question be "generally medically acceptable." Because the phrases "generally medically acceptable" and "but that is unnecessary" both act as delimiters on the term "treatment," the treatment must partake of both qualities. And because we have already concluded that the proper object of "treatment" is the

---

[18] Chief Justice Roggensack faults us for eliding "good faith" from this part of our analysis. Chief Justice Roggensack's dissent, ¶85. We do so because our task at this stage is to discover what the "treatment" is supposed to be treating. The employee's "good faith" in accepting the treatment provides no information useful to that inquiry. Ms. Flug's subjective beliefs cannot affect the statute's grammar, regardless of the sincerity with which they are held.

23

compensable injury, we must also conclude that the treatments contemplated by the statute are those that are generally medically acceptable as a treatment of the compensable injury.

¶37 The statute has one further requirement, which we have not yet addressed——"good faith." And although it does not budge "compensable injury" from its place as the object of "treatment," it is important to a complete understanding of how the statute functions. The portion of Wis. Stat. § 102.42(1m) that describes eligibility for benefits says, in full: "If an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary . . . ." This provision exists against the backdrop of a Worker's Compensation program that requires payment of medical expenses only to the extent they are "reasonably required" to "cure and relieve from the effects of the [compensable] injury,"[19] and disability benefits only for incapacities caused by a work-related injury.[20] An unnecessary medical treatment is not "reasonably required" to treat the compensable injury. And a disability caused by a treatment is not a disability caused by an injury. It is here that § 102.42(1m) intervenes, requiring disability benefits when a treatment for a compensable injury that turns out to not be reasonably required (that is, unnecessary) causes a disability.

---

[19] Wis. Stat. § 102.42(1).

[20] Wis. Stat. § 102.43.

Without this, there would be no statutory liability for such an event. So § 102.42(1m) extended the employer's statutory liability, and the "good faith" requirement acts as a limit on that extension. If the disability-creating treatment turns out not to have been necessary to treat her compensable injury, she still receives disability benefits so long as she undertook the treatment in good faith. We need not explore this concept further because we have already concluded Ms. Flug's treatment does not qualify under the statute's extension of liability.[21]

### C. Consistency

¶38 Ms. Flug says Wis. Stat. § 102.42(1m) codified Spencer (but for one aspect not relevant here), and all parties urge us to apply that statute consistently with cases decided before its adoption. This opinion fits neatly into our canon.

¶39 Spencer addressed itself to an employee who injured his knee while on the job; everyone agreed he was entitled to compensation. Mr. Spencer had his kneecap removed, but he continued to suffer. He sought the advice of a different

---

[21] In light of our holding that this statute extends liability only to treatments that are directed at a compensable injury, Chief Justice Roggensack asks this eminently reasonable question: "What then of the context in which an employee who in good faith believed that the invasive treatment she undertook would treat her compensable injury?" Perhaps employees in such circumstances ought to receive benefits, but they must direct their petition for relief to the legislature——not the court. We can only apply the law as the legislature created it. The statute, as it currently exists, extends liability based on the reality of what the treatment addresses, not the employee's belief about what it addresses.

25

doctor, who recommended an arthrodesis.[22] His original doctor disagreed, saying such a procedure would not be reasonably necessary. Nonetheless, Mr. Spencer opted for the arthrodesis, which left him with a stiff leg. The administrative agency found the arthrodesis was not reasonably necessary, and so rejected payment of expenses related to that procedure. Spencer, 55 Wis. 2d at 527-28. The circuit court set aside the agency's decision, ruling that "where an employee, in good faith, accepts the recommendation of treatment of one doctor, with whom another doctor disagrees, the commission cannot disregard the consequences of treatment (increased period of temporary total disability, increased permanent partial disability and the expense of the arthrodesis) because they find the treatment was either unnecessary or unreasonable." Id. at 532. We agreed with the circuit court, and held that "[t]he employer is responsible for the consequences not only of the injury, but the treatment." Id. Although not explicit, our juxtaposition of "injury" and "treatment" in that sentence can lead to no conclusion but that the treatment we were considering was for the compensable injury. Because we conclude today that the "treatment" identified in Wis. Stat. § 102.42(1m) must treat the compensable injury to qualify for benefits, our holding is consistent with what we said in Spencer.

---

[22] Arthrodesis is "[t]he stiffening of a joint by operative means." Arthrodesis, Stedman's Medical Dictionary (28th ed. 2006).

26

¶40 The court of appeals subsequently considered an injured employee's situation that closely tracks that of Ms. Flug in City of Wauwatosa v. LIRC, 110 Wis. 2d 298, 328 N.W.2d 882 (Ct. App. 1982). There, a police officer had slipped off a curb while on duty, and incurred a compensable hip injury. Id. at 299. The officer's treating doctor diagnosed him as also having a pre-existing hip condition that his work-related accident aggravated, and recommended surgery. The insurance carrier's doctor disagreed, opining that the fall "had not aggravated nor accelerated the preexisting [] condition, but merely brought the condition to the attention of the surgeon." Id. The hearing examiner resolved the disputed testimony against the officer, finding no aggravation. The Commission disagreed, and so awarded benefits related to the surgery for the pre-existing, but aggravated, hip injury. Id. at 300. The circuit court affirmed, citing Spencer. The court of appeals acknowledged that the key question was whether Spencer controlled, but concluded that our holding in that case "applies only to cases involving treatment for an undisputed compensable industrial injury." Id. at 301. The court of appeals was correct, and its conclusion is reflected in our holding here.

¶41 Finally, we consider Honthaners Restaurants, Inc. v. LIRC, 2000 WI App 273, 240 Wis. 2d 234, 621 N.W.2d 660. An employee suffered a compensable injury to her arm, and received disability benefits for just under six months as well as accrued medical expenses during that period. Id., ¶3. She subsequently sought benefits for an additional year of treatment. The

27

Commission found that she had been "overdiagnosed and over-treated," because she continued to receive treatments long after her compensable injury had resolved. However, because she had sought the extended treatment in "good faith," the Commission said she was entitled to continued benefits. Id., ¶7. Agreeing with the Commission, the court of appeals said "Spencer teaches that as long as the claimant engaged in the unnecessary and unreasonable treatment in good faith, the employer is responsible for payment." Id., ¶15. It distinguished Spencer and City of Wauwatosa on the basis that "[i]n Spencer, the parties disputed medical treatment, not cause." Id., ¶21. The court of appeals concluded that the Spencer rule applied because the treatment the employee received was directed at her compensable injury, even though it turned out not to have been necessary. Comparing the employee's situation to Spencer, the Honthaners Restaurant court said:

> Both cases involve no dispute that the claimants suffered a compensable injury. Both deal with differing medical opinions on diagnosis and treatment. Both cases have a claimant who continued the unnecessary treatment in good faith. Thus, we conclude the Commission properly relied on Spencer and [the employee] is entitled to additional benefits.

Id., ¶22. That conclusion is consistent with our holding today, which requires that the treatment in question was directed at the compensable injury.

* * *

¶42 Our opinion today tracks the language of Wis. Stat. § 102.42(1m) and is consistent with prior opinions delivered by

28

the courts of this state. It is also consistent with the nature of Wisconsin's Worker's Compensation system. Indeed, any other conclusion would represent a sharp break with the "legislatively enacted compromise" between employers and employees for the payment of expenses and benefits consequent upon "work-related injury [or] disease." Nelson, 174 Wis. 2d at 302. And it would represent a significant step towards making the Worker's Compensation system "a blanket insurance policy to provide benefits for disabilities which may become manifest while on the job but are in no way caused by or related to the employment." Lewellyn, 38 Wis. 2d at 61. There is nothing in the text of Wis. Stat. § 102.42(1m) to suggest such a momentous change, and even if that change is warranted, we are not the proper branch of government to prescribe it. Thus, we will not adopt an understanding of this statute that would extend employer liability to injuries and diseases that have nothing to do with the workplace.[23]

---

[23] The court of appeals, Ms. Flug, and the Chief Justice discuss whether the compensable injury must "cause" a treatment to qualify for benefits—a proposition they all reject. See, e.g., Chief Justice Roggensack's dissent, ¶¶85-87, 90. It is difficult to know what to do with this construct (which finds no place in the statutory language) because injuries, of course, do not "cause" treatments. They certainly need them. And they frequently won't cure without them. But if treatments are caused by anything, they are caused by those skilled in the healing arts. In any event, nothing in this opinion should be construed as requiring that a compensable injury "cause" a treatment. Our opinion is simply that a qualifying treatment is one that treats a compensable injury.

IV. CONCLUSION

¶43 We hold today that an employee is not eligible for benefits under Wis. Stat. § 102.42(1m) if the disability-causing treatment was directed at treating something other than the employee's compensable injury. Because Ms. Flug's surgery treated her pre-existing condition, not her compensable injury, her claim must be disallowed. We reverse the court of appeals because it should have affirmed the Commission's decision.

*By the Court.*—The decision of the court of appeals is reversed and the case is dismissed.

¶44 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* This review arises from an unpublished decision of the court of appeals[1] reversing the circuit court's decision, which affirmed the Labor and Industry Review Commission's (LIRC) order denying Tracie Flug (Flug) disability benefits under Wis. Stat. § 102.42(1m).

¶45 I conclude that Flug, who has sustained a compensable (work-related) injury from which began a continuing course of pain and who underwent surgery upon the advice of her medical doctor to alleviate that pain, is entitled to compensation pursuant to Wis. Stat. § 102.42(1m) if she accepted the physician's advice and undertook surgery with the good faith belief that surgery would treat her work-related injury, even though surgery was unnecessary treatment for that injury. Neither LIRC nor the Administrative Law Judge (ALJ) made factual findings in regard to Flug's good faith belief, or the lack thereof, in undertaking surgery. Therefore, I would remand the matter to LIRC to make the requisite finding and complete its obligations under § 102.42(1m).

¶46 Accordingly, I would affirm the court of appeals' decision reversing LIRC and remanding the matter for additional fact-finding on the issue of good faith, and if necessary for a determination of the damages to which Flug is entitled. Because the majority opinion fails to recognize the factual nature of

---

[1] <u>Flug v. LIRC</u>, No. 2015AP1989, unpublished slip op. (Wis. Ct. App. June 21, 2016).

1

good faith, its importance to the plain meaning of Wis. Stat. § 102.42(1m) and avoids addressing good faith in the context in which it arises, I respectfully dissent from the majority opinion.

## I.  BACKGROUND

¶47 The majority opinion ably sets forth the underlying facts.  Therefore, I shall relate only those facts necessary to attune the reader to the discussion that follows.

¶48 On February 14, 2013, while engaged in work for Wal-Mart, Flug felt a sudden pain in her neck that radiated down her right arm.  She had not experienced pain before this incident. Because the pain continued, on February 20, 2013, she sought medical treatment from Dr. Sabina Morissette.  Dr. Morissette diagnosed Flug with "[r]ight arm and shoulder strain with possible relation to the cervical spine itself."  Dr. Morissette released Flug back to work, with restrictions on the tasks she could perform.

¶49 Because the pain continued, on February 25, 2013, Flug sought physical therapy from Debra Stow.  Stow's records show:

> [Flug] presents with the diagnosis of right shoulder pain.  Patient stated that on Thursday, February 14 she started work without any pain . . . .  When she woke up Friday morning she had a lot of really intense pain and had to leave work early. . . .  [T]he pain starts in her neck and goes down the back portion of her shoulder down into her arm.

¶50 On March 6, 2013, Flug saw Dr. Andrew Floren. Dr. Floren noted that Flug "was doing a good deal of overhead work scanning some boxes in the Shoes Department.  She developed

a severe sudden pain in her right upper back area. This pain went down the posterior shoulder and arm to the wrists." On March 22, 2013, Floren's notes indicate that Flug's neck and back were slowly getting better, but the pain in her shoulder was not improving. In addition, she had begun to have numbness in her right hand and fingers.

¶51 On April 2, 2013, Flug had a follow-up appointment with Dr. Floren and said that her pain was not improving. Floren recommended a steroid injection, which Flug had. However, it did not alleviate her pain.

¶52 Because of the continuing pain, on May 2, 2013, Floren referred Flug to Dr. Eduardo Perez, a neurosurgeon. Dr. Perez recommended surgery to alleviate her pain. Specifically, Dr. Perez recommended Flug undergo an "anterior cervical dis[c]ectomy with fusion/fixation at the C5-C6, C6-C7 levels." Dr. Perez stated: "given time and overall severity of the symptoms and the lack of response to nonsurgical management make [Flug] a surgical candidate."

¶53 On June 4, 2013, Dr. Perez performed a discectomy. At a follow-up approximately one month after the surgery, Flug told Dr. Perez that she was "doing excellent" and almost back to full health. Dr. Floren allowed Flug to return to work on July 17, 2013, but gave her a twenty-pound lifting restriction. Eventually, that restriction was increased to thirty-pounds before being eliminated entirely in November 2013.

¶54 Initially, Wal-Mart paid Flug worker's compensation disability benefits. However, subsequent to Flug's surgery,

3

Wal-Mart retained its own physician, Dr. Morris Soriano, to conduct an independent review of Flug's medical records. Dr. Soriano concluded that the surgery was not necessary to treat Flug's work-related injury. Based on these findings, Wal-Mart notified Flug that it was terminating her disability benefits as of June 22, 2013.

¶55 On August 16, 2013, Flug filed a worker's compensation claim against Wal-Mart with the Department of Workforce Development. Flug sought disability benefits through August 8, 2013, including benefits related to the surgery, as well as 22% permanent partial disability benefits and medical expenses.

¶56 Flug submitted a "Practitioner's Report on Accident or Industrial Disease in Lieu of Testimony" signed by Dr. Floren. Dr. Floren opined that given the sudden onset of Flug's symptoms while at work, it was "medically probable" that the work-related injury caused a cervical disability, which required the recommended surgery to eliminate her pain. In contrast, Dr. Soriano opined that Flug's discectomy was "not reasonable, necessary or related to the injury of February 14, 2013." Flug did not have Dr. Soriano's opinion prior to undertaking surgery.

¶57 Flug was the only witness to testify in-person at the hearing. She testified that she felt a "[p]ain, instant pain, just shooting down from my neck down into my shoulder and into my arm" while scanning a box above her head. She further testified that she believed all of the medical treatment she subsequently received was necessary to relieve the continuing pain she sustained due to the work-related injury.

4

¶58 The ALJ reasoned that the medical history provided by Flug to Dr. Floren was inconsistent, and therefore, the ALJ discounted his testimony. As a result, the ALJ denied Flug's application for disability benefits.

¶59 LIRC adopted the factual findings of the ALJ. However, contrary to what the ALJ had found, LIRC then concluded that Wis. Stat. § 102.42(1m) did not apply to Flug's claims because she had not suffered a compensable work-related injury. The circuit court affirmed LIRC.

¶60 Before the court of appeals, LIRC argued that Wis. Stat. § 102.42(1m) requires a causal link between an employee's compensable injury and his or her invasive treatment. The court of appeals reasoned that LIRC, by requiring "that an employee must show his or her treatment was the result of a compensable injury, the Commission reads an additional causation requirement into the statute."[2] Therefore, the court of appeals concluded that LIRC's interpretation of the statute was unreasonable. We granted review. I would affirm the court of appeals.

II. DISCUSSION

A. Standard of Review

¶61 "When reviewing a worker's compensation claim, we review LIRC's decision, not the decisions of the circuit court or court of appeals." DeBoer Transp., Inc. v. Swenson, 2011 WI

---

[2] Flug v. LIRC, No. 2015AP1989, unpublished slip op. (Wis. Ct. App. June 21, 2016).

5

64, ¶29, 335 Wis. 2d 599, 804 N.W.2d 658 (citing <u>Cty. of Dane v. LIRC</u>, 2009 WI 9, ¶14, 315 Wis. 2d 293, 759 N.W.2d 571).

¶62 This appeal turns on the interpretation of Wis. Stat. § 102.42(1m). The interpretation of a statute presents a question of law that we generally review independently. <u>Cty. of Dane</u>, 315 Wis. 2d 293, ¶14 (citing <u>Watton v. Hegerty</u>, 2008 WI 74, ¶6, 311 Wis. 2d 52, 751 N.W.2d 369).

¶63 There are times when an agency's interpretation of a statute is entitled to deference. <u>Id.</u> (citing <u>Clean Wis., Inc. v. Pub. Serv. Comm'n of Wis.</u>, 2005 WI 93, ¶37, 282 Wis. 2d 250, 700 N.W.2d 768). However, in the present case, LIRC did not interpret Wis. Stat. § 102.42(1m). Instead of construing the statute, LIRC said that Flug "failed to present credible medical evidence to establish that she suffered a work-related injury because the history upon which Dr. Floren relied when making his determination as to whether the incident on February 14, 2013, resulted in a work injury was incorrect."[3] Accordingly, there is no statutory interpretation by LIRC to which deferral could apply.

¶64 Except in very limited circumstances not present in the case now before us, we accept LIRC's factual findings as conclusive. Wis. Stat. § 102.23(1)(a)1. However, neither LIRC nor the ALJ made a factual finding in regard to whether Flug had

---

[3] <u>Tracie Flug v. Wal-Mart Assoc., Inc.</u>, ERD No. 2013-006010 (LIRC, Feb. 23, 2015).

6

a good faith belief that surgery would treat her work-related injury.

¶65 Accordingly, I interpret and apply Wis. Stat. § 102.42(1m) under well-established principles of statutory interpretation. And, as did the court of appeals, I make no factual findings, but refer the lack of a finding in regard to whether Flug had a good faith belief that undertaking surgery would treat her work-related injury to LIRC so that it can complete its obligations under § 102.42(1m).

B. Statutory Interpretation, General Principles

¶66 "It is, of course, a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. For this reason, "statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" Id., ¶45 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. (citing Bruno v. Milwaukee Cty., 2003 WI 28, ¶¶8, 20, 260 Wis. 2d 633, 660 N.W.2d 656).

¶67 Additionally, "[c]ontext is important to meaning." Id., ¶46. As a result, "statutory language is interpreted in the context in which it is used; not in isolation but as part of

7

a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. And, if "statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." Id. (citing Bruno, 260 Wis. 2d 633, ¶7).

¶68 It is under these principles that I interpret Wis. Stat. § 102.42(1m).

C. Interpretation of Wis. Stat. § 102.42(1m)

¶69 "A purpose of the worker's compensation statute is to 'provide prompt justice for injured workers and to prevent, as far as possible, the delays that might arise from protracted litigation.'" Cty. of Dane, 315 Wis. 2d 293, ¶34 (quoting Bosco v. LIRC, 2004 WI 77, ¶48, 272 Wis. 2d 586, 681 N.W.2d 157). And, "an injured employee is guaranteed 'recovery irrespective of his own fault and irrespective of the employer's absence of fault.'" Id. (quoting Mulder v. Acme-Cleveland Corp., 95 Wis. 2d 173, 180, 290 N.W.2d 276 (1980)). "However, in exchange for this guarantee, the employee is obliged to accept a limited and scheduled compensation award." Id. (internal quotations omitted). "As a result, the statute must be broadly construed in order to best promote its statutory purposes." Id. (citation omitted); see also Johnson v. Wis. Lumber & Supply Co., 2003 Wis. 304, 310, 234 N.W.2d 506 (1931) ("It has been said over and over again in workmen's compensation cases that the act should be liberally construed . . . .").

8

¶70 As part of Wisconsin's worker's compensation scheme, employers[4] are required to compensate employees for certain injuries when "the employee is performing service growing out of and incidental to his or her employment." Wis. Stat. § 102.03(1)(c)1. And, under Wis. Stat. § 102.42(1), an "employer shall supply such medical, surgical, chiropractic, psychological, podiatric, dental, and hospital treatment, medicines, medical and surgical supplies, crutches, artificial members, appliances, and training in the use of artificial members and appliances . . . medicines, and medical supplies, as may be reasonably required to cure and relieve from the effects of the injury." § 102.42(1).

¶71 In addition to the obligation to pay certain medical expenses, an employer also may be liable for disability indemnity if an employee becomes disabled as a result of an injury or treatment for the effects of an injury. Under certain circumstances, the employer's obligation includes payment for unnecessary, invasive medical treatment that causes an employee to become disabled. See, e.g., Wis. Stat. § 102.42(1m).

¶72 Wisconsin Stat. § 102.42(1m) renders an employer liable for disability indemnity when an employee undergoes invasive treatment that is later discovered to have been

---

[4] Employer is defined by Wis. Stat. § 102.04 and includes, in relevant part, any "person who usually employs 3 or more employees for services performed in this state, whether in one or more trades, businesses, professions, or occupations, and whether in one or more locations." Wis. Stat. § 102.04(1)(b)1.

unnecessary to treat the work-related injury. Section 102.42(1m) provides, in relevant part:

> LIABILITY FOR UNNECESSARY TREATMENT. If an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary, the employer shall pay disability indemnity for all disability incurred as a result of that treatment. An employer is not liable for disability indemnity for any disability incurred as a result of any unnecessary treatment undertaken in good faith that is noninvasive or not medically acceptable.

¶73 To receive disability indemnity from his or her employer under Wis. Stat. § 102.42(1m), an employee must meet a number of statutory criteria: (1) a compensable (work-related) injury; (2) good faith in undertaking invasive medical treatment; (3) medically acceptable treatment that is unnecessary for the work-related injury; (4) disability incurred because of the treatment. § 102.42(1m).

¶74 Here, LIRC does not dispute that Flug suffered a compensable injury, even though it did so in the opinion we review. "Injury" is defined by Wis. Stat. § 102.01(c), in relevant part, as any "mental or physical harm to an employee caused by accident or disease." And the types of injuries for which an employer is liable are enumerated in Wis. Stat. § 102.03.

¶75 Good faith is the touchstone of a plain meaning interpretation of Wis. Stat. § 102.42(1m). Stated more completely, whether the employee undertakes invasive treatment

10

with the good faith belief that it would treat her work-related injury is a central focus of § 102.42(1m).

¶76 Good faith is a state-of-mind question; accordingly, whether one has acted in good faith is a question of fact. Schmitz v. Firstar Bank of Milwaukee, 2003 WI 21, ¶34, 260 Wis. 2d 24, 658 N.W.2d 442 ("the question of whether Firstar acted in good faith or in accordance with reasonable commercial standards under Wis. Stat. § 403.419(3)(1993-94) was a question of fact that would need to be tried"); Tang v. C.A.R.S. Protection Plus, Inc., 2007 WI App 134, ¶41, 301 Wis. 2d 752, 734 N.W.2d 169 ("Whether a party to a contract has breached its implied duty of good faith is a question of fact.").

¶77 Good faith is not defined in Wis. Stat. § 102.42. Therefore, we apply its ordinary meaning such as may be found in a dictionary. Kalal, 271 Wis. 2d 633, ¶53. The current version of Black's Law Dictionary defines good faith, in part, as "[a] state of mind consisting in . . . honesty in belief or purpose." Good Faith, Black's Law Dictionary 808 (10th ed. 2014). Accordingly, an employee must act with an honest "belief or purpose" in order to act with good faith.

¶78 The legislature has tied the employee's good faith obligation to the employee's undertaking invasive treatment because good faith modifies the verb "undertakes" pursuant to the plain meaning of the terms employed in Wis. Stat. § 102.42(1m). ("If an employee . . . undertakes in good faith invasive treatment.")

11

¶79 Moreover, the employee's treatment must be generally medically acceptable, but unnecessary to treat a compensable work-related injury. Wisconsin Stat. § 102.42(1m) does not mandate that the treatment be unnecessary for any medical reason; it requires only that it be unnecessary to treat a compensable injury.

¶80 Finally, the employee must show that the invasive treatment resulted in the employee's disability. This is the only aspect of Wis. Stat. § 102.42(1m) that requires an employee to show causation.

¶81 The terms of Wis. Stat. § 102.42(1m) must be read in context. The obligation for the employee to act with a good faith belief that the invasive treatment is treatment for her work-related injury limits the employee's treatment choices and in so doing, protects the employer. However, as long as an employee acts with a good faith belief that undertaking medically invasive treatment will treat her work-related injury, the employer is liable for disability even when the treatment was medically unnecessary to treat a work-related injury. This good faith obligation protects employers from an employee seeking medical treatment that the employee knows is unnecessary to treat a compensable injury.

¶82 Importantly, all Wis. Stat. § 102.42(1m) requires is that an employee act with a good faith belief that undertaking invasive treatment is treatment for her work-related injury. Nothing in the plain language of the statute can reasonably be

construed as requiring the employee to know that medical advice for invasive treatment should not be taken.

¶83 Nevertheless, LIRC and the majority opinion[5] contend that the work-related injury must be medically connected to the employee's invasive treatment that resulted in disability. According to the majority opinion and LIRC, without that direct connection, Wis. Stat. § 102.42(1m) does not apply. Their narrow statutory interpretation gives the employee the burden to know whether the medical treatment that was recommended by treating physicians to alleviate on-going pain should be accepted or rejected.

¶84 The majority opinion's statutory interpretation reads good faith out of the statute in the context of the employee who undertakes invasive, unnecessary treatment with a good faith belief that the compensatory injury is being treated. For example, the majority opinion repeatedly substitutes an ellipsis for the words "good faith" when it quotes portions of the statute, as it makes what it believes are winning statutory constructs.[6] Furthermore, when the majority opinion finally gets around to addressing good faith it says, "If the disability-creating treatment turns out not to have been necessary to treat her compensable injury, she still receives disability benefits

---

[5] Majority op. ¶¶32-33. The statute requires causation only insofar as the invasive treatment must have caused the disability.

[6] See majority op., ¶¶31, 32.

13

so long as she undertook the treatment in good faith."[7] The majority opinion then continues to avoid the central issue of the employee's good faith by saying, "We need not explore this concept further because we have already concluded Ms. Flug's treatment does not qualify under the statute's extension of liability."[8] Is this because the majority opinion's reasoning requires that the work-related injury caused the treatment? The majority opinion would permit recovery under Wis. Stat. § 102.42(1m) only for invasive treatment directed solely at the compensable injury. What then of the context in which an employee who in good faith believed that the invasive treatment she undertook would treat her compensable injury?

¶85 While the majority opinion's grammatical arguments are interesting, they do not explain why the legislature did not include a provision requiring the employee to show that the work-related injury caused the treatment, if the legislature had wanted to include that requirement. See Kalal, 271 Wis. 2d 633, ¶44 ("We assume that the legislature's intent is expressed in the statutory language."); cf. Ott v. Peppertree Resort Villas, Inc., 2006 WI App 77, ¶25 n.11, 292 Wis. 2d 173, 716 N.W.2d 127 ("We are not permitted to re-write the statute, however, and we conclude the difference in language the legislature chose to use in the two subsections supports our conclusion that it did not

---

[7] Majority op., ¶37.

[8] Id.

14

intend to impose the causation-of-pecuniary-loss requirement on private plaintiffs who bring a claim under [Wis. Stat.] § 707.57(1)."). It chose not to do so.

¶86 In addition, requiring an employee show the work-related injury caused the invasive treatment would lead to unreasonable results. See Kalal, 2004 WI 58, ¶46 (we interpret statutes in such a way as "to avoid absurd or unreasonable results"). It would force an employee to know, at the time of an invasive treatment whether the invasive treatment she is undertaking is to alleviate pain from a compensable injury or, whether it would alleviate pain from a pre-existing injury or both. But see Brown v. Dibbell, 227 Wis. 2d 28, 51, 595 N.W.2d 358 (1999) (reasoning, "a patient is not in a position to know treatment options and risks and, if unaided, is unable to make an informed decision").

¶87 We do not expect lay people to have knowledge of when medical practices or procedures should be employed. See generally Martin v. Richards, 192 Wis. 2d 156, 170, 531 N.W.2d 70 (1995) ("The average patient has little or no understanding of the medical arts, and ordinarily has only his physician to whom he can look for enlightenment with which to reach an intelligent decision." (quoting Canterbury v. Spence, 464 F.2d 772, 780 (D.C. Cir. 1972))). For this reason, an interpretation of Wis. Stat. § 102.42(1m) that presumes an employee is capable of possessing such knowledge is unreasonable. Cf. Hanson v. Am. Family Mut. Ins. Co., 2006 WI 97, ¶20, 294 Wis. 2d 149, 716 N.W.2d 866 (reasoning, "when a tortfeasor causes an injury to

15

another person who then undergoes unnecessary medical treatment of those injuries despite having exercised ordinary care in selecting her doctor, the tortfeasor is responsible for all of that person's damages arising from any mistaken or unnecessary surgery").

¶88 Our decision in Spencer v. DILHR, 55 Wis. 2d 525, 200 N.W.2d 611 (1972), illustrates this principle.[9] In Spencer, we held that an employee is not "to be faulted because he chose to follow erroneous medical advice . . . as long as he did so in good faith." Id. at 532. Spencer was predicated on good faith; and based on good faith, we concluded it was eminently reasonable for an employee to rely on the advice of a physician when deciding whether to undergo invasive treatment. Id. ("There is no evidence to show that in accepting arthrodesis Spencer did so other than in good faith. The employer is responsible for the consequences not only of the injury, but the treatment."); see also Honthaners Restaurants, Inc. v. LIRC, 2000 WI App 273, ¶15, 240 Wis. 2d 234, 621 N.W.2d 660 ("In

_____

[9] Spencer v. DILHR, 55 Wis. 2d 525, 200 N.W.2d 611 (1972) predated the passage of Wis. Stat. § 102.42(1m). In Spencer, the employee suffered an injury at work and underwent surgery. Id. at 526-27. After the surgery, the employee suffered a 15% partial permanent disability. Id. The doctor that performed the surgery determined that further treatment was unnecessary. Id. However, the employee saw another physician, who concluded that the employee should undergo another surgery. Id. The subsequent surgery left the employee with partial permanent disability of 40%. Id.

16

Spencer, the supreme court allowed recovery for medical treatment and expenses that were incurred when the injured employee followed what, in hindsight, appeared to be erroneous medical advice. Spencer teaches that as long as the claimant engaged in the unnecessary and unreasonable treatment in good faith, the employer is responsible for payment." (internal citations omitted)).

¶89 Accordingly, all that Wis. Stat. § 102.42(1m) requires the employee to prove in order to come within the statutory provisions is that at the time when the employee undertakes an invasive procedure he or she had a good faith belief that the procedure would treat a compensable injury and that the invasive treatment resulted in a disability. The employee need not show that the compensable work injury caused the employee to undergo invasive treatment.

### D. Application

¶90 In the present case, Flug provided proof to the ALJ in the form of Dr. Floren's written report and she testified. Dr. Floren was one of her treating physicians. Wal-Mart provided the report of Dr. Soriano, who did not review Flug's medical records until after she had surgery.

¶91 It is undisputed that Flug suffered a compensable injury and underwent an invasive treatment, a discectomy. It is also undisputed that she did not have pain prior to the work-related injury on February 14, 2013. Furthermore, it is undisputed that her pain continued as she went from health care provider to health care provider in search of effective

17

treatment for pain and the pain continued until after she underwent a discectomy on June 4, 2013.

¶92 Dr. Soriano's report opines that surgery was unnecessary to treat her work-related injury. However, Flug did not have the benefit of his opinion at the time she undertook invasive treatment. Finally, it is undisputed that Flug's unnecessary treatment caused the disability for which she now seeks benefits.

¶93 Moreover, Dr. Soriano's opinion that the work-related injury did not necessitate invasive treatment is of no relevance. Dr. Soriano's opinion speaks to whether the need for invasive treatment was caused by her work-related injury. However, Dr. Soriano gave his opinion after Flug's surgery.

¶94 Post-hoc examinations like Dr. Soriano's are not relevant when determining whether Flug acted with a good faith belief at the time she undertook surgery that it would alleviate the pain she had suffered since her work-related injury on February 14, 2013. Flug's good faith belief is her state of mind at the moment when she undertook the invasive treatment. And, it is her state of mind at the time she undertook surgery that the majority opinion avoids discussing.

¶95 In sum, Flug satisfied most of Wis. Stat. § 102.42(1m)'s criteria. She sustained a compensable (work-related) injury. Based on medical advice to treat pain, she underwent a discectomy, an invasive and medically acceptable treatment that was unnecessary to treat her work-related injury. And, she sustained a disability as a result of the surgery. If

18

she undertook the discectomy with the good faith belief that it would treat her work-related injury, Wis. Stat. § 102.42(1m) requires nothing more. However, as I explained above, good faith is a fact question that appellate courts do not decide. Accordingly, a remand to LIRC is necessary.

### III. CONCLUSION

¶96 I conclude that Flug, who has sustained a compensable (work-related) injury from which began a continuing course of pain and who underwent surgery upon the advice of medical doctors to alleviate that pain, is entitled to compensation pursuant to Wis. Stat. § 102.42(1m) if she accepted the physician's advice and undertook surgery with the good faith belief that surgery would treat her work-related injury, even though surgery was unnecessary treatment for that injury. Neither LIRC nor the ALJ made factual findings in regard to Flug's good faith belief, or the lack thereof, in undertaking surgery. Therefore, I would remand the matter to LIRC to make the requisite finding and complete its obligations under § 102.42(1m).

¶97 Accordingly, I would affirm the court of appeals' decision reversing LIRC and remanding the matter for additional fact-finding on the issue of good faith, and if necessary for a determination of the damages to which Flug is entitled. Because the majority opinion fails to recognize the factual nature of good faith, its importance to the plain meaning of Wis. Stat. § 102.42(1m) and avoids addressing good faith in the context in

which it arises, I respectfully dissent from the majority opinion.

¶98 ANN WALSH BRADLEY, J. *(dissenting).* There is a reason that the court of appeals issued an unpublished decision here. And it likely is the messy record, which certainly does not represent LIRC's finest hour.

¶99 There is one, and only one, LIRC decision that was ever issued in this case. It is dated February 23, 2015, and it is the decision we review today. DeBoer Transp., Inc. v. Swenson, 2011 WI 64, ¶29, 335 Wis. 2d 599, 804 N.W.2d 658 ("When reviewing a worker's compensation claim, we review LIRC's decision, not the decisions of the circuit court or court of appeals."); see also Stoughton Trailers, Inc. v. Labor and Indus. Review Comm'n, 2007 WI 105, ¶26, 303 Wis. 2d 514, 735 N.W.2d 477.

¶100 The majority has forthrightly acknowledged that we owe no deference to LIRC's conclusion of law set forth in that decision because, as even LIRC has now confessed, its conclusion is clearly erroneous. Majority op., ¶16. Likewise, the majority has acknowledged that the issue it decides today was never addressed by the Commission because of "its mistaken belief that Ms. Flug had suffered no compensable injury at all." Id.

¶101 So what is this case doing here?

¶102 The problem, of course, arises from LIRC's February 23, 2015, decision where it misstated or misunderstood the essential conclusion of law it was supposed to be reviewing. Rather than issuing an order modifying the Feb 23, 2015, decision or issuing a new decision from which appeal rights

1

attend,[1] appellate counsel for LIRC attempts to change horses in midstream.

¶103 The Department of Justice, representing LIRC on appeal, now argues that although LIRC misstated the only conclusion of law it was supposed to be reviewing, such an impediment presents no obstacle to our review because this error was "inconsequential."  It contends that because LIRC adopted the ALJ's findings of fact and conclusions of law in full, that this court is bound by those findings of fact.

¶104 However, in its February 23, 2015, decision, LIRC expressed one important caveat concerning findings of fact that excludes any potential for reliance on Dr. Soriano's report——a report relied upon in the majority opinion——the ALJ "did not adopt the findings of Dr. Soriano."  Flug v. Wal Mart Assocs., Inc., WCD No. 201300610 (LIRC, Feb. 23, 2015).  Consequently, LIRC also did not adopt those findings.

¶105 Additionally, appellate counsel's argument flies in the face of well-established precedent on administrative agency review.  Counsel is trying to do now what LIRC did not do.  However, appellate counsel is stuck with the facts of the case, which consist of a clearly erroneous February 23, 2015, LIRC decision.  "[T]his court cannot accept appellate counsel's post

---

[1] Wisconsin Stat. § 102.23(1)(a)2., provides in relevant part that "[w]ithin 30 days after the date of an order or award made by the commission, any party aggrieved by the order or award may commence an action in circuit court for review of the order or award by serving a complaint as provided in par. (b) and filing the summons and complaint with the clerk of the circuit court."

2

hoc rationalization for agency action. If an agency's order is upheld, it must be on the same basis articulated in the order by the agency itself." Illinois v. United States, 666 F.2d 1066, 1077 (7th Cir. 1981) (citing Fed. Power Comm'n v. Texaco, Inc., 417 U.S. 380, 397, 94 S. Ct. 2315 (1974); Burlington Truck Lines v. United States, 371 U.S. 156, 168-69, 83 S. Ct. 239 (1962)). See also Bagdonas v. Dep't of Treasury, 93 F.3d 422, 426 (7th Cir. 1996) ("It is, of course, well settled that courts cannot accept counsel's post hoc rationalization for agency action.").

¶106 Rather than acknowledge and address the procedural morass into which this court has waded, the majority skirts the issue, contending that it must accept LIRC's findings of facts: "the Commission has already found and we must accept [the findings]." Majority op., ¶34.

¶107 What factual finding is there that the majority feels so enslaved to uphold?

¶108 It cannot be any factual finding based on Dr. Soriano's report because as stated above, the LIRC decision specifically observed that it did not adopt those findings.

¶109 It cannot be any of the asserted factual findings relied upon by the majority because they do not exist. For example, the majority asserts that the ALJ and the Commission specifically found that "the surgery didn't treat Ms. Flug's compensable injury." Majority op., ¶23. Likewise, the majority contends that LIRC made a factual finding about the object of the surgery: "we must accept" the Commission's factual finding

3

that the "object of Ms. Flug's surgery was not her compensable injury, but her pre-existing condition." Majority op., ¶34.

¶110 Attached to this writing are the findings of fact of the ALJ as well as the February 23, 2015, decision of LIRC. As the reader will be able to observe, neither the ALJ nor LIRC made such findings.

¶111 The majority uses the clearly erroneous LIRC decision and nonexistent findings of fact as a springboard to avoid the real issue in this case: whether the event of February 14, 2013, aggravated and accelerated beyond normal progression a progressively deteriorating condition. In doing so, the majority makes errors in both what it says and what it fails to say.

¶112 Contrary to the majority, I would remand this case to LIRC for a new hearing so that it can weigh the competing medical opinions and then, based on those opinions, issue findings of fact and a conclusion of law that is not clearly erroneous.[2]

Accordingly, I respectfully dissent.

---

[2] I would reverse and remand LIRC's decision for a determination of the threshold issue of whether Ms. Flug's work injury aggravated and accelerated her preexisting condition beyond its normal progression. With one exception, I also join Chief Justice Roggensack's dissent addressing Flug's alternative argument on the issue of good faith. As set forth herein, the majority opinion contains a number of factual missteps and therefore I cannot join the sentence in Chief Justice Roggensack's dissent that states "[t]he majority opinion ably sets forth the underlying facts." Chief Justice Roggensack's dissent, ¶47.

4

I.

¶113 This case started out as a somewhat routine worker's compensation case. Ms. Flug has a conceded work injury of February 14, 2013, which she sustained while repeatedly raising her right arm to scan boxes at Walmart. She initially treated with her primary care physician, who referred her to an occupational specialist, Dr. Andrew Floren.

¶114 After a two month period of treatment, Dr. Floren referred Ms. Flug for an evaluation by a neurosurgeon, Dr. Eduardo Perez. He found that she had a degenerative disc disease and that a discectomy and fusion was needed at two levels in the cervical spine. Dr. Perez recommended that she have surgery. He "discussed all these findings with Ms. Flug," and "entered into an informed consent discussion regarding anterior cervical discectomy with fusion/fixation at the C5-6, C6-7 levels."

¶115 The surgery that Ms. Flug underwent on June 4, 2013, was apparently successful. Under worker's compensation law, this particular procedure is a scheduled injury, which means a pre-determined minimum amount of disability attributable to the limitations that arise from the nature of the surgery itself.

¶116 In a follow up exam, Ms. Flug reported that she "was doing excellent" and felt almost 100 percent better. That's the good news for Ms. Flug. Now the bad news.

¶117 After Ms. Flug underwent surgery, the worker's compensation carrier hired Dr. Morris Soriano to do an independent medical exam. He never met with Ms. Flug, but upon

5

a review of her records, filed a report one year after the injury and 9 months after the surgery, opining that the February 14, 2013, event did not aggravate beyond normal progression her pre-existing spinal condition.

¶118 On the other hand, Dr. Floren opined that it did. He stated that he "strongly disagree[d]" with Dr. Soriano's statement, observing that "[t]he patient's history, clinical examination, and radiologic studies all support her need of surgery; which decision was also shown appropriate by her response to that surgery."

¶119 Competing medical opinions in worker's compensation cases are standard fare. Ms. Flug does not contend that the event of February 14, 2013, caused her degenerative spinal condition. Of course it did not. Nor does she assert that the event simply aggravated her spinal condition, because a mere aggravation of a pre-existing condition is insufficient to be compensable under worker's compensation law. See Lewellyn v. Indus. Comm'n, 38 Wis. 2d 43, 59, 155 N.W.2d 678 (1968). The aggravation and acceleration beyond normal progression of a progressively deteriorating condition, however, is compensable and that was the basis of her claim before LIRC. Id.

¶120 At the administrative hearing, the case was presented as a battle between written expert medical opinions. One determined that the February 14, 2013, injury aggravated and accelerated beyond normal progression the pre-existing condition and the other concluded that it did not.

6

¶121 The ALJ's decision set forth the information provided in the written reports of both Dr. Floren and Dr. Soriano, however, it relied on neither. As the LIRC decision explains, the ALJ's decision is not based on the findings of Dr. Soriano. And it certainly is not based on Dr. Floren's opinion because it is contrary to it.

¶122 If the ALJ's decision was based on neither the medical opinion of Dr. Floren nor on that of Dr. Soriano, then on what medical expert opinion did the ALJ base its conclusion? Apparently, the ALJ engaged in its own sojourn into the medical records and determined that no additional compensation was due.

II

¶123 Having set forth the facts, I turn to address both what the majority opinion has erroneously stated and what of import it has failed to state.

¶124 From the outset, the majority gets the facts wrong.[3] It states that Ms. Flug "underwent surgery in the belief it was necessary to treat her work-related soft-tissue strain." Majority op., ¶1.

---

[3] Additionally, the majority states that the parties agree that Flug "suffered a permanent partial disability as a direct result of the treatment." Majority op., ¶18. Walmart concedes that Ms. Flug suffered a temporary disability due to her cervical strain. However, it does not agree that Ms. Flug suffered a permanent partial disability because it contests that Ms. Flug is entitled to worker's compensation benefits as a result of her surgery.

7

- The majority is incorrect. Ms. Flug did not undergo surgery because she believed it necessary to treat a strain. The record reflects that prior to recommending surgery, Ms. Flug's surgeon, Dr. Perez, diagnosed Ms. Flug with "right-sided C7 radiculopathy associated with C6-7 disk osteophyte complex and degenerative disk disease at the C5-6 level." Dr. Perez "discussed all these findings with Ms. Flug," and "entered into an informed consent discussion regarding anterior cervical discectomy with fusion/fixation at the C5-6, C6-7 levels."

¶125 The majority again errs when it contends that the ALJ and the Commission specifically found that "the surgery didn't treat Ms. Flug's compensable injury."[4] Majority op., ¶23.

- No such finding exists.

¶126 Likewise, the majority asserts that we must accept the Commission's factual finding that the "object of Ms. Flug's surgery was not her compensable injury." Majority op., ¶34.

- No such finding exists.

¶127 The majority further asserts that Ms. Flug's argument is beyond its reach, because she "does not assert the findings

---

[4] The ALJ found as a factual matter that there was a variance in the history Ms. Flug gave her treating physicians. Based on this factual finding, the ALJ made the conclusion of law that "there is a legitimate doubt as to the compensability of the claim as a traumatic injury beyond that already conceded and paid by the respondents."

8

of fact are the result of fraud, or that the Commission acted outside of its powers." Majority op., ¶23.

- Ms. Flug has consistently argued that the Commission acted outside of its powers. In her appeal to the circuit court she argued that "LIRC acted without and in excess of its powers as described in Wis. Stat. § 102.23." She continued this argument in the court of appeals, which explained that "Flug argues the Commission acted in excess of its powers in three respects." Flug v. Labor & Indus. Review Comm'n, No. 2015AP1989, ¶24, unpublished slip op. (Wis. Ct. App. June 21, 2016).

- The majority contradicts itself when it asserts that Flug does not argue here that LIRC acted in excess of its powers. What does "acted in excess of its powers" means in the context of worker's compensation? It is well-settled that "when a decision by LIRC is not supported by credible and substantial evidence, the decision is in excess of LIRC's authority." Xcel Energy Serv. Inc., v. Labor and Indus. Review Comn'n, 2013 WI 64, ¶55, 349 Wis. 2d 234, 833 N.W.2d 665.

- And yet, that is precisely what the majority acknowledges is advanced here. The majority describes Ms. Flug's arguments as "a continuation of the argument Ms. Flug made in the court of appeals, where she unequivocally stated she "'sustained a compensable injury and . . . underwent surgery for a compensable

9

injury.'  Ms. Flug maintained this position even through oral argument here."  The basis of Ms. Flug's argument is that LIRC's decision was not supported by the relevant evidence of record:  "She says the relevant medical testimony establishes that the surgery for the injury was reasonable and necessary" and that "her surgery was, in fact, for a compensable injury."  Majority op., ¶¶20, 23.

¶128 Attempting to explain the reasoning of LIRC and the court of appeals, the majority offers that "both the Commission and the court of appeals base their competing analyses on the shared understanding that Ms. Flug's surgery had nothing to do with her compensable injury."  Majority op., ¶20.

- The Commission could not have based its analysis on the understanding that her surgery had nothing to do with her compensable injury because it concluded that she had no compensable injury.

- The court of appeals never determined whether Ms. Flug's surgery was related to her compensable injury. Instead, as the majority earlier acknowledged the court of appeals didn't need to decide "whether the invasive procedure was actually directed at a compensable injury, so long as the employee had a good faith belief that it was."  Majority op., ¶19.

¶129  Having set forth some of the majority's errors in what it says, I address next what it fails to say.  It is only by relying on some of these errors that the majority is able to

10

remain silent, refraining from addressing Ms. Flug's essential argument.

¶130 Although the majority acknowledges that Ms. Flug's true argument is that her surgery was necessitated by the February 14, 2013, event because it aggravated and accelerated beyond normal progression a progressively deteriorating condition, it insists that it cannot discuss it. The majority contends that it is precluded from addressing Ms. Flug's argument regarding the nature of her injury because of nonexistent findings of fact. Majority op., ¶23 ("Thus, because the Commission eliminated the factual predicate for Ms. Flug's argument, we would not be able to engage it unless we first rejected the Commission's finding on this point."). It declares that "Ms. Flug's argument [is] beyond our reach." Id.

¶131 The majority is likewise silent about the extent of Ms. Flug's disability. It emphasizes in its recitation of facts that at a one month post surgery appointment Ms. Flug stated that "she was doing 'excellent' and feeling 'almost 100 [percent]'". Majority op., ¶4. The picture that the majority paints makes the reader wonder whether Ms. Flug has any disability whatsoever. Nowhere in the majority opinion is the reader advised that the surgery causes permanent limitations. The worker's compensation administrative rules recognize that a minimum disability for each level of a discectomy/fusion is 10

11

percent permanent partial disability.[5] Ms. Flug had procedures at two levels of her cervical spine.

¶132 Finally, the majority says nothing about that part of LIRC's February 23, 2015, decision where it excluded any potential for reliance on Dr. Soriano's report. The majority relies on the report despite LIRC's determination that the ALJ "did not adopt the findings of Dr. Soriano." Flug v. Wal Mart Assocs., Inc., WCD No. 201300610 (LIRC, Feb. 23, 2015).

¶133 In sum, because the February 23, 2015, decision of LIRC is clearly erroneous and not supported by any findings of fact, I would remand this case to LIRC for a new hearing, providing an opportunity to weigh the competing medical opinions and then, based on those opinions, issue new findings of fact and a conclusion of law that is not clearly erroneous.

¶134 Accordingly, I respectfully dissent.

¶135 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

_____

[5] Ms. Flug had surgery on both the C-5/C-6 level and the C-6/C-7 level. The Department of Workforce Development rule governing a scheduled worker's compensation injury provides in relevant part that "[t]he disabilities set forth in this section are the minimums for the described conditions." DWD 80.32(1) (2015-16); see also Wis. Stat. § 102.52. The minimum permanent partial disability rating for a discectomy and fusion is 10% per level. DWD 80.32(11).

STATE OF WISCONSIN
DEPARTMENT OF WORKFORCE DEVELOPMENT
WORKER'S COMPENSATION DIVISION
P.O. BOX 7901
MADISON, WISCONSIN 53707
(608) 266-1340

2013-008010

TRACIE L FLUG
528 W CEDAR ST
CHIPPEWA FALLS WI 54729

Applicant,

vs.

PLEASE SEE ENCLOSURE

WAL-MART ASSOCIATES INC
2786 COMMERCIAL BLVD
CHIPPEWA FALLS WI 54729-5031

Respondent,

NEW HAMPSHIRE INSURANCE CO
C/O CLAIMS MANAGEMENT INC
PO BOX 1288
BENTONVILLE AR 72712-1288

Insurance Carrier.

---oOo---

A hearing was held in Rice Lake, Wisconsin on March 10, 2014.

APPEARANCES: The Applicant, In Person and by Attorney Jeffrey J. Klemp; the Respondents by Attorney Richard D. Duplessie.

Conceded were jurisdictional facts and an average weekly wage of $674.00. At issue was whether the applicant sustained an injury on February 14, 2013, arising out of and occurring while performing services growing out of and incidental to her employment with the employer, respondent. If causation is found the further issues presented are the nature and extent of disability resulting from the injury and the respondents' liability for certain medical expenses.

A.App. 135

1

Upon the issues the Administrative Law Judge makes the following:

## FINDINGS OF FACT

The applicant, date of birth October 21, 1970, worked as a department store retail supervisor for the employer. On February 14, 2013, she was assigned to do price changes utilizing a handheld scanning device. She testified that this required her scan items on racks above her head and as she was lowering the scanner she felt the sudden onset of pain in her neck radiating down her right arm. She sought treatment on February 20, 2013 from Dr. Sabina Morissette, complaining of neck and shoulder pain. An x-ray examination revealed a loss of disk space at C5 and C6 with some anterior spurring but no evidence of fracture. Dr. Morissette diagnosed right arm and shoulder pain with a possible relation to the cervical spine. Conservative care was prescribed including a course of physical therapy. She was referred to an occupational health specialist, Dr. Andrew Floren. Dr. Floren examined the applicant on March 6, 2013, noted the condition was resolving with conservative care and reported he saw no sign of cervical involvement. On follow-up on March 22, 2013 Dr. Floren diagnosed neck and upper back pain, slowly resolving as well as right shoulder pain, minimally resolving. However, after examination on April 2, 2013, Dr. Floren noted the right shoulder pain was not resolving and the applicant had persisitent right hand tingling which worsened with neck extension. He ordered an MRI examination.

The applicant underwent the MRI examination on April 4, 2013. It revealed moderate spondylotic change in the cervical spine with no severe foraminal or spinal canal narrowing and degenerative change in the right shoulder with no rotator cuff tear or labral tear identified. The applicant continued to experience symptoms including neck pain and tingling in her right hand. On April 15, 2013 Dr. Floren concluded there was potential nerve irritation in the neck likely at C6-7 on the right. A steroid injection was prescribed and administered on April 19, 2013. However, no relief of symptoms resulted. On May 2, 2013 Dr. Floren noted the applicant's condition was slowly worsening and referred her for a neurosurgical consultation with Dr. Eduardo Perez.

A.App. 136

2

3

Dr. Perez examined the applicant and diagnosed a C6-7 osteophyte complex and degenerative disk disease at C5-6. Dr. Perez recommended surgical intervention in the form of an anterior cervical discectomy C5 through C7, which was performed on June 4, 2013. Recovery was uneventful and Dr. Floren declared her to be at a healing plateau on November 6, 2013, rating permanent partial disability at 12 percent as compared to permanent and total disability

By certified medical report dated August 13, 2013, Dr. Floren concluded that the work activity directly caused the applicant's disability. In answers to questions attached to that report he agreed the applicant's degenerative condition was not directly caused by any single work incident, that the symptoms began while she was performing overhead work scanning boxes and that the work duties on or about February 15, 2013, were at least a material contributory causative factor in the progression of her cervical disability. In an addendum dated December 13, 2013 he revised his estimate of permanency from 12 percent to 22 percent. In a third addendum dated February 26, 2013, he revised his opinion to deny the work activity directly caused the disability. Rather he reported that activity caused the disability by precipitation, aggravation and acceleration of her pre-existing progressively degenerating condition beyond normal progression. He further reported that an appreciable period of workplace exposure at the employer-respondent either caused or was a material contributory causative factor in the onset or progression of the applicant's condition.

At the request of the respondents the applicant's records were reviewed by Dr. Morris Soriano. By certified medical report dated February 5, 2014, Dr. Soriano found that the alleged incident of February 14, 2013 caused a cervical strain, with a healing period of four to six weeks. He further reported the work incident did not cause or aggravate her pre-existing condition. He noted the only finding during surgery was osteophytes at C6-7 with no evidence of disc herniation. He noted that reaching up with a 25 ounce scanner would not aggravate that condition.

To be compensable a claim for compensation must be established beyond a legitimate doubt. There is significant doubt as to the accuracy of the history upon which Dr. Floren rendered his opinions. The history as testified to was that of a sudden pain on the date of injury with pain going down the posterior shoulder and arm to the wrists and that Dr. Morrisette's history of

A.App. 137

4

February 20, 2013 concurs. However, Dr. Morrisette's history on that date was only that "she had some neck pain and shoulder pain after doing some repetitive work above shoulder height" causing her to leave work the following day. The applicant informed her physical therapist on February 25, 2013 that "she started work without any pain but towards the end of the day started getting really sore through her shoulder, neck and back." The applicant testified she immediately felt pain like needle pricks. That was not mentioned in the contemporaneous records. On the contrary in the initial reports she denied any numbness or tingling. There was no mention of tingling in the extremity until April 15, 2013. The applicant provided no explanation for this significant difference in histories. Dr. Floren predicated his opinion upon the sudden onset of symptoms and that "...since that time she has been having unrelenting burning/shooting/pain when she puts her head in certain ways...." Again the medical records contradict this. The applicant reported significant improvement in her condition through March 28, 2013.

The opinions of a practitioner can be no better than the history upon which the opinion is rendered. Here the significant variance in the history as given from that reflected in the contemporaneous records raise a legitimate doubt as to the compensability of the claim as a traumatic injury beyond that already conceded and paid by the respondents. While Dr. Floren also reported the appreciable workplace exposure was causative, this was not developed at hearing particularly given the inconsistency in history of injury on February 14, 2013.

NOW, THEREFORE, this:

ORDER

The application is dismissed.

Dated and mailed at Madison, Wisconsin this 30th day of April, 2014.

Roy L. Sass, Administrative Law Judge

FlugTracieRLSjasRDO

A.App. 138

4

5

CC:
ATTORNEY JEFFREY J KLEMP
C/O KLEMP LAW OFFICES
LAW OFFICES OF JEFFREY KLEMP
4252 SOUTHTOWN DR STE B
EAU CLAIRE WI 54701

ATTORNEY RICHARD D DUPLESSIE
C/O WELD RILEY PRENN & RICCI
3624 OAKWOOD HILLS PKWY
PO BOX 1030
EAU CLAIRE WI 54702-1030

A.App. 139

STATE OF WISCONSIN
LABOR AND INDUSTRY REVIEW COMMISSION
P O BOX 8126, MADISON, WI 53708-8126
http://dwd.wisconsin.gov/lirc/

TRACIE L FLUG, Applicant
528 W CEDAR ST
CHIPPEWA FALLS WI 54729

WORKER'S COMPENSATION
DECISION

Claim No. 2013-006010

Dated and mailed:

FEB 2 3 2015

flugtr_wad.doc:145:

WAL MART ASSOCIATES INC, Employer
2786 COMMERCIAL BLVD
CHIPPEWA FALLS WI 54729-5031

NEW HAMPSHIRE INSURANCE CO, Insurer
C/O CLAIMS MANAGEMENT INC
PO BOX 1288
BENTONVILLE AR 72712-1288

**SEE ENCLOSURE AS TO TIME LIMIT AND PROCEDURES ON FURTHER APPEAL**

An administrative law judge (ALJ) for the Worker's Compensation Division of the Department of Workforce Development issued a decision in this matter. A timely petition for review was filed.

The commission has considered the petition and the positions of the parties, and it has reviewed the evidence submitted to the ALJ. Based on its review, the commission agrees with the decision of the ALJ, and it adopts the findings and order in that decision as its own.

### ORDER

The findings and order of the administrative law judge are affirmed.

A.App. 140

6

BY THE COMMISSION:

Laurie R. McCallum, Chairperson

C. William Jordahl, Commissioner

David B. Falstad, Commissioner

## MEMORANDUM OPINION

The applicant has petitioned for commission review of the ALJ's decision. The applicant asserts that there is no dispute that she injured herself at work. Rather, the applicant argues that the medical dispute is over the nature and extent of the applicant's disability. The issue before the ALJ whether the applicant sustained an injury on February 14, 2013, arising out of and occurring while performing services growing out of and incidental to her employment with the employer. The applicant has the burden to establish that she suffered a work injury. The applicant failed to present credible medical evidence to establish that she suffered a work-related injury because the history upon which Dr. Floren relied when making his determination as to whether the incident on February 14, 2013, resulted in a work injury was incorrect.

The applicant asserts that Dr. Soriano, the respondent's expert, is incorrect about the nature of the injury. The applicant asserts that Dr. Soriano indicated that scanning a product on a shelf could not have aggravated or worsened two levels of a previously arthritic condition at C5-6 and C6-7 to the point they became symptomatic. However, the applicant asserts that there is no burden on the applicant to show that the exertion was anything beyond unusual. The ALJ did not adopt the findings of Dr. Soriano. Rather, the ALJ was left with legitimate doubt as to whether the applicant suffered any work injury, and so he dismissed the application. See *Leist v. LIRC*, 183 Wis. 2d 450, 457 (1994).

The applicant also asserts that the respondent is liable for benefits under Wis. Stat. § 102.42(1m) because she in good faith underwent invasive treatment that is generally medically acceptable but is unnecessary. The applicant asserts that Dr. Soriano determined that the applicant suffered a cervical strain as a result of the work incident and that the surgery was not reasonable and necessary to treat that work injury.

2

A.App. 141

TRACIE L FLUG

Wis. Stat. § 102.42 provides:

> (1m) LIABILITY FOR UNNECESSARY TREATMENT. If an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary, the employer shall pay disability indemnity for all disability incurred as a result of that treatment. An employer is not liable for disability indemnity for any disability incurred as a result of any unnecessary treatment undertaken in good faith that is noninvasive or not medically acceptable. This subsection applies to all findings that an employee has sustained a compensable injury, whether the finding results from a hearing, the default of a party, or a compromise or stipulation confirmed by the department.

In order for Wis. Stat. § 102.42(1m) to apply the applicant must first establish that she sustained a compensable injury. The applicant has failed to do this.

The applicant further asserts that the ALJ erred when he concluded that the applicant gave a different history to Dr. Morissette than the one she gave to Dr. Floren. Since they both work in the same clinic and since Dr. Floren wrote that Dr. Morissette's "history concurs" the applicant asserts that the only reasonable inference is that Dr. Floren reviewed the notes of Dr. Morissette. The commission agrees with the ALJ's conclusions. In February, when the applicant sought treatment with Dr. Morissette she stated that she had some pain after doing some work. The applicant told Dr. Floren that she had sudden and significant symptoms.

The applicant asserts that the ALJ conflated terminology and this led to additional misunderstanding. The applicant asserts that she did not provide an explanation for the significant difference in histories because she was not asked to as she does not believe there was a significant difference in histories. She states she had pain but not numbness or tingling at the onset of her symptoms. The applicant asserts that she did not experience tingling until around March 22, 2013. The commission notes that the applicant experienced problems at work on February 14, 2013, but did not seek treatment until February 20, 2013. The commission notes that the applicant was performing a relatively minor task on February 14, and using a scanner which was not heavy. The applicant gave very specific testimony at the hearing regarding radiating, needles going through the shoulder blade and radiating down into her arm. She also indicated that she felt something shift in her neck and it just pinched it off. This shifting was followed by a sudden onset of pain. Thus, the commission agrees with ALJ's conclusion that the variance in history raises a legitimate doubt as to the compensability of the claim.

cc: Attorney Jeffrey J. Klemp
    Attorney Richard D. Duplessie



TRACIE L FLUG

cc:
ATTORNEY JEFFREY J KLEMP
C/O KLEMP LAW OFFICES
LAW OFFICES OF JEFFREY KLEMP
4252 SOUTHTOWN DR STE B
EAU CLAIRE WI 54701

ATTORNEY RICHARD D DUPLESSIE
C/O WELD RILEY PRENN & RICCI
3624 OAKWOOD HILLS PKWY
PO BOX 1030
EAU CLAIRE WI 54702-1030

A.App. 143

9